Good morning and welcome to the Ninth Circuit. I just want to say I want to really appreciate the two people I'm sitting with today, Judges Schroeder and Tallman. Both of them are working for free, so I appreciate your continued support of our court. Our court would be in big, big trouble if we didn't have folks like these two stepping up and hearing cases. So with that, we have four cases for argument today. Before we begin with the first case, just something I always say, in the Ninth Circuit, there is no extra credit or bonus points for using all of your argument time. So if you've made your points and you're not getting any questions from us, it's okay to sit down. And with that, we'll call the first matter, Childs. Thank you, Your Honor. Kevin Lafke, may it please the Court, on behalf of Plaintiff Martin Childs. Can you move the mic just a little bit? The clerk says this is a stationary antique. I was thinking, me too. But in any event, I did want to start out by bringing the Court's attention to a relatively new case from the U.S. Supreme Court that I think impacts our case here today, and that's Wisconsin Bell v. U.S. Exrell Heath. That's a case that the U.S. Supreme Court unanimously decided in February of this year, and with the Court's permission, I'd file a memorandum of supplemental authorities regarding that case. Sure, 20HA would be great. I appreciate it. And what Wisconsin Bell says and how I think it shows that the district court here too narrowly construed the definition of a claim and the reach of the False Claims Act, is that, again, the allegations in this case are that Medicaid funds were used improperly, as you know, and were taken for purposes not consistent with Medicaid. But where's the claim? That's the problem I'm having with the case. And that's the problem, Judge, that the district court had. But I think in thinking about this case like the traditional FCA case, you know, I give you a bill and you pay it, the FCA is much broader than that. And so when the district court said, gosh, there's no claim here, they respectfully, I think, missed. When we decided to cut that physician service, we were pretty clear that it has to be a claim for the payment of monies by the United States. And I think in that case's context, that was correct, Judge. But if you look at this court's jurisprudence in Winter and Godecky, this court's taken a much broader perspective on what constitutes a claim. I want to make it clear, Judge, that I think there's two pieces to that. And so the LM-2 comes under 3729A1B, where it talks about a false claim, knowingly make, use, or cause to be made a false record or statement. And so that's much broader than just a bill. That's much broader. And so the LM-2 is a false statement, and it comes right under that statute. But a statement is not a claim. No, it's not. But as the statute defines claims, the term claim can be presented. Again, that's the first definition. Always with the FCA, the traditional is the first thing. But then the second is made to a contractor, grantee, or other recipient if the money or property is to be spent or used on the government's behalf or to advance a government program or interest. That's very broad, and that encompasses the Medicaid diversion here. But it implies that it has to go to the government. There's a communication to the government. Could you explain this? It's a mystery to me in both your brief and the adversary's brief as to how the money gets into the trust fund.  So, as alleged, and again, I'd sideways say this is why we should have been allowed to amend. But again, putting that- But you never said you'd explain how the money got into the trust fund. Well, I think what we said was very broad in terms of how we could clarify and delineate the allegation. Could you explain to me how your position is that the money was- your allegation is that the money from the trust fund was misspent? Right. And so what I want to know is how did the money get into the trust fund in the first place? The government pays the money into the trust fund. These are Medicaid funds that are designated to be used by the trust for purposes authorized by the government. And who tells the government that they should pay money into the trust? The trust. And so the trust is being run by the unions, and they're getting this money from the government to supposedly be used for Medicaid-related purposes related to these home health care workers and other union members. And so, again, using it to buy a building is not one of those purposes. Well, I understand that, but how does the government know how much money to pay into the trust? By virtue of the claims and disbursements that are made by the trust. And so here, like with Wisconsin Bell, it's other entities that are moving the money, and then- In block or on a claim-by-claim basis? Both.  So Medicare or Medicaid writes a check for a million dollars payable to the trust anticipating that it will be used solely for the payment of benefits to the trust beneficiaries? Is that your theory?  And it's not proper to spend any of that money on administrative expenses to actually process the claims? Yes, and it's obviously a complex scheme, but in winter this court said, you know, when the plaintiff is an insider or whistleblower and says, this is a fraudulent scheme, then that determination or opinion, I'll call it, is entitled to what you said was, quote, a presumption of truth. And so, again, this court and the U.S. Supreme Court has said, we're going to interpret these claims very broadly. At this stage, it's in the light most favorable to the plaintiff, all inferences in the benefit of the plaintiff. And so here, motion to dismiss granted- If the money is paid in part in a block grant before any claims are processed from individual beneficiaries, then I'm still having a causation problem between a claim and the government making a payment on the claim. And I respect your comment and understand it, but, again, would refer you back to the statute, which, again, is very broad. The Supreme Court in Wisconsin-Bell, very broad. And this court in Winter, very broad as to what constitutes a claim. But it's almost a causation problem with your theory of the False Claim Act violation. You need to show a link between a fraudulent representation and the payment of the money. If the money is going to what the statute calls other recipient, then it still can be the basis of a false claim and a fraudulent scheme, which is actionable under the FCA. So, again, I think where the district court missed it here, respectfully, is that in its opinion, I think it's at ER 10, it really constrained the definition of a claim. Do you have any other authority to support this theory? I sure hope so, Judge. I mean, I feel like- Well, you're looking at us in the hope that we're going to give you the answer that you're looking for, but what do I look at in terms of precedent? Again, I would look at Wisconsin Bill. I would look at this court's opinions in Winter and Godecky. Again, Winter, with several comments about, you know, a conspiracy, which this could be to submit false claims, is actionable. Aid in the submission of false claims is actionable. But in all those cases, there are actual claims. And then that makes perfect sense to me, that you could have both a substantive false claim and a conspiracy to commit to filing a false claim. Here you may have a conspiracy, but where's the claim? I think in Wisconsin Bill, the Supreme Court answered that because there the plaintiff alleged that the internet phone company essentially benefited from a fraudulent scheme. The money came from, you know, this E-rate program for school districts to subsidize internet coverage, and then it went into another nonprofit private entity, and ultimately Bill benefited in an indirect way. And so again, I think this court and the Supreme Court has said that these schemes, this claim is intended to reach all kinds of fraud, and that's what we've alleged here in the light most favorable to the plaintiff. The genesis of the False Claims Act, as I recall, is in the Civil War. Is it not as a result of ripping off the Union Army and the acquisition of war material? It was, and it's since been amended, and it's been broadened significantly, consistent with recent jurisprudence from this court. I think Congress amended even in 2009, and so there's been a broadening of this. I'm still not being clear, I guess. Did the Union submit a bill to the government and say, you pay this into this trust? The trust submitted, I don't know if I'd call it a bill, but it submitted requests for funding, and it was funded from the government from Medicaid funds. So, you know, again— Is that a different form than the LM-2? Yeah, I think that's different. I think it is different. I think this— Well, why didn't you allege that then? Perhaps we should have. Perhaps we should have been allowed to amend. But, Judge, in the light most favorable to plaintiff, I think we've made it here. In a worst-case scenario, I'd ask the court to remand to allow us to amend. To amend and say what? If I may. Yeah, Judge. So, thank you. To amend to talk about the things we've been talking about here. I don't think it's necessary to say, you know, for example, I think our allegations are sufficient. But I don't think it's—and I don't think it's necessary to have to say, the trust got Medicaid funding by asking for it. I don't think we said that. Instead, we said the trust got Medicaid funding. Okay, but asking for it in what form? That's what—I mean, you're alleging fraud here. So, under 9b, you have to be fairly particular as to who, what, when, where, why, and how. There is that language, Judge, I acknowledge. But, again, at the same time, that runs up against the broad nature of a claim and what that means. And so, we've alleged significant facts related to this fraudulent scheme that plaintiff allowing for the presumption of truth is entitled— Alleged misappropriation. Yeah. And that, given the fact that it's government money, is sufficient. All right, unless there are any further questions. I'm going to go ahead and give you a minute for rebuttal, okay? Thank you, Judge. You got it. All right, so, counsel, as you approach, I see we have split time six and four. So, what I do in this situation is you have what I call a hard six, meaning that you don't need to worry about your four. You're up next, okay? All right, so, you don't have to be, like, panicking, like, oh, my God, he's eating my time, he's eating my time, he's eating my time. Your time is safe. All right, you may proceed. Good morning, Your Honors, and may it please the Court. Max Carter-Oberstone for Defendant, SEIU International. I want to start my argument by addressing head-on two of the points that my friend on the other side made. So, the first is the issue of whether a claim for payment was submitted in this case as required by the False Claims Act. And my friend cited three authorities for that proposition, Winter, Goodecke, and a new Supreme Court case, Wisconsin-Bell. So, under Rule 9b, plaintiff has to allege the who, what, where, when of whether a claim was submitted. That means when was it submitted, what did the claim say, why was it false, who received it? The complaint in this case is bereft of those details. Winter provides no support to the plaintiff in this case. In Winter, there were 65 examples of actual claims submitted described in great detail in the complaint. In Goodecke, there were 15 examples of specific claims that were submitted in the case. Wisconsin-Bell is a United States Supreme Court case decided in February of this year, and my friend is raising it for the first time in argument. But that case also does not alter the standard for determining whether a claim was submitted. That case addresses an entirely different issue that is not presented here. And in that case, the issue was whether a public-private entity that dispersed funds, where it was least disputed whether those funds were in fact federal funds or not, could constitute a claim. And the Supreme Court held that the funds were indeed federal funds, and so a claim could be submitted to this public-private entity, but we don't have anything like that here. But would you explain to us how the money gets into the trust, who tells the government to pay money? Your Honor, I think that that's a great question that is not answered by the allegations in the complaint. That's correct, but I'm asking you, do you know? I do not know, because I could only say what the plaintiff has alleged in this case. And I think the most charitable reading of what the plaintiff has alleged is that the funds were used in a way that is inconsistent with a declaration of trust. But that is an entirely separate legal question of whether they are consistent with the terms of the Medicaid program. And there are simply no allegations explaining what federal law, regulation, or contractual provision relating to the Medicaid program was violated here. So you're saying he might have a theory under breach of fiduciary duty, but he doesn't have a false claim? I would say that's generally correct, Your Honor. I think at most he's gestured towards a claim of breach of fiduciary duty, but even there the details are quite scant. He just says that the money was not used for the benefit of the union members, but then cites the LM2 and points to the way certain monies were dispersed that, at least on their face, seem entirely consistent with benefiting union members. But, counsel, I'm asking a real-world question, not what was going back and forth in the district court. How does the money get into this trust? Your Honor, I do not. You represent who? SCIU International. The International? Yes. So you don't actually operate this? This is done by the local? Is that what's going on? The trust is an entirely distinct entity, so it is not run by the local. Well, who set it up? The trust is a joint partnership between the State of Oregon and the local. It is a distinct entity. The trustees, as the plaintiff has alleged, there are five positions for trustees to be appointed by the State of Oregon and five positions to be appointed by the local, and the trust operates independently from either the state or the local union itself. And the trust itself was not named as a party, so there's no legal counsel representing it? That's absolutely correct, Your Honor. Nobody here can answer the question Judge Schroeder is posing. I will speak for myself and say that I cannot answer that question and that it's plaintiff's burden to allege those facts if indeed he believes that they are relevant to approving his claim. After filing four separate complaints, he decided each time not to allege any such facts, and that's where we find ourselves today. I'd also just like to briefly note that there are no allegations in the complaint as to materiality. There are no allegations in the complaint as to scienter. And as to the international union, an entirely independent basis to affirm the judgment below are the lack of any particularized allegations as to vicarious liability. There's nothing in the complaint that would describe the type of principal-agent relationship that the Supreme Court has required in order to apply vicarious liability. Well, I think that that's an independent basis, certainly, in addition to the lack of allegations to support the substantive claim. And heeding Judge Owen's reminder at the beginning, if there are no further questions, I would ask this Court to affirm the judgment below. Thank you, counsel. So you've got some extra time now. You don't need to use it, but you've got some extra time. Forty-eight seconds. I promise I'm not paid by the syllable here, Honor. Good morning. May it please the Court. My name is Noah Warman. I'm here on behalf of Defendant SEIU Local 503. Judge Schrader, to address your point, I similarly do not know how the trust gets the money. I may have a better suspicion or relation, and that is that as counsel for the international relay, it is a trust. And I want to note, too, there's four. I'm sure you have read the documents. The complaint is not a model of clarity. I'm never sure which trust we're talking about. But there are four trusts. They are between the state and the local. They are all distinct legal entities managed by and over. They report to a board of trustees composed of five management representatives from the state and five appointed by the union. So to address that, but that entity or those entities would get money through the state of Oregon. They are the receipt. Today I heard for the first time with crystal clarity that the allegation, which was not discernible from the complaints, because there are up to four, one, three, and three amendments, that the payments are to and the claims for payment, to adjust Judge Tallman's point, are made by the trusts in some way, shape, or form. And I would. The trust who purchased the office building. It's the union that purchased it. And I think this is a critical thing to understand in looking at the complaint. In the union, you mean Local 503? The local being 503, yes, sir, the union being Local 503. Before I forget, by the way, by adoption, I want to, on behalf of the local adopt and the excellent points raised by counsel for the international, there is nothing impermissible inherently. It's quite lawful for a trust and a union to contract with one another to provide goods or services, for example, a call center, a mailing room, things like that. So what is cast repeatedly as something nefarious is quite lawful. And, in fact, when you look under ERISA and you see, for instance, prohibited transaction exemptions, when you have a contract for goods or services at the market rate between those entities, it's perfectly fine. So in and of itself, the notion that money goes from a trust to a union or vice versa pursuant to a contract is not unlawful or suggestive. No, no, and it's okay to provide the services. The problem is with respect to buying the building and buying an asset. But are you saying that you, that the local doesn't have any ID? How is this money supposed to be used when it comes out of the trust? Well, whatever the union has contracted to provide are agreed with the trust. So to follow up again on Judge Tallman's point, what we're talking about here are a breach of fiduciary claims, a breach of a trust agreement, and or conceivably a breach of contract between two entities. But, you know, a core piece here too is the falsity. If the money is properly in the trust, we're done. It's no longer a Medicaid fund. So what we've never heard is that the trusts have never delivered whatever goods or services they are to be providing. So as counsel for the international point out, there's just layer after layer here of deficiencies. I think that the judge below seized upon the crystal clear point. We haven't even gotten to the step of the who, what, where, why. We don't even have a claim at this point. But it's like Jenga. You take one piece out. Here are multiple pieces. Well, again, in the real world, what is your understanding as you represent the local, which had participated in the establishment of the trust? What was your understanding of what they were supposed to be doing? Providing services pursuant to whatever things were supposed to be done by the trust. For example, a call center to reach out to. I mean, these are folks who are represented by the unions, or are there some overlap here? We're not talking about a distinctly different. I see that my time is up. But a distinctly different pool of folks. So they can contract, and that call center may also have union purposes as well. So there could be, if you will, a subcontract. A call center is to do what? To answer calls of the union members? And perhaps if you reach out. These are home health care workers who there's a very specific Oregon statute in terms of how they are represented by SEIU 503. They're dispersed throughout the state. So we're not talking, for example, a large acute care hospital. We have people who literally are working in every corner of the state of Oregon who we would be dealing with here. And you train them, right, in the training center? Yes, sir. So one of the trusts, one or two of the trusts, sorry, I don't have the precise number, involve training. They receive money in order to train health care workers in order to make sure they're working with their... I'm trying to remember the exact term. I don't know if it's a resident, people with whom they're working to make sure that they're compliant. They're patients, basically. Basically, yes, sir. That's the point of that process. And this is all under a special Oregon statutory program? All through an Oregon legislative, yeah, a very comprehensive Oregon legislative scheme, which, by the way, of course, is overseen by the state of Oregon. And then with respect to the union, there was just a piece that struck me, if I may address it real quick, and that is the United States Department of Labor has a very specific division, the Office of Labor Management Standards, that absolutely make sure that union funds are being used appropriately, they are being used for lawful purposes, that that reporting is proper. So to suggest that there's no oversight is to ignore actually a very comprehensive federal regime of regulating labor expenses. So labor management. Yes. And so if there are no further questions... All right, thank you, counsel. Thank you very much for your time today. Thank you. And that's why the LM-2 is important as a statement that potentially violates the FCA here because of that oversight. But what does the LM-2 look like? I mean, isn't it essentially a balance sheet that tells the Department of Labor how much money is in each of the trusts? And what money was spent on what, importantly, here. And I think the most important thing to finish with... I assume those reports show that funds were used to purchase and set up the call center and the training center, right? The allegation is that the LM-2 misrepresented the true use of those funds. Wouldn't it be just under sort of a general administrative and overhead budget category? Again, it could be, but the allegation in this complaint is that the LM-2 submitted here misrepresented the true use of those funds. Okay, so what was the representation on the LM-2 that you allege to be false? Yeah, if I remember, it was around paragraphs 15 to 20 in the third amended complaint, and it alleged, for example, that the use of the Medicaid funds to buy the building, it wasn't disclosed. So again, under the FCA, it's a crime, I'll call it, by omission, fault by omission. And if I could, I'm over time, just the last thought. What you heard here in the last argument was essentially the union can set up a trust, and the trust can get federal government money, and then the union and the trust can agree to use it however they want. If there's an agreement between the union and the trust, we can use it for that purpose. But isn't the check the fact that the board is composed of equal numbers of labor and management representatives, and the employers certainly have a monetary interest in seeing to it that the funds are properly used? I don't think it's a check, Judge, but I think what it is, as alleged, is that there's five from the union and five from the state of Oregon. Right. And so it's not necessarily management, it's state government. Are state monies also advanced to the trust? To the extent that Medicaid could have involved state money, it could. But, of course, most Medicaid. But isn't the state the primary administrator of Medicaid funds? I thought that was the difference. The feds handle Medicare and the state handles Medicaid. It certainly can in terms of on the ground, like the traditional uses of Medicaid. But, again, I'd say this is not the traditional use of Medicaid, nor is it a traditional false claims act case, as I've argued. Okay. All right. Thank you. Thank you, counsel. Thanks to all of you for your briefing and argument in this case. This matter is submitted.
judges: SCHROEDER, TALLMAN, OWENS